## STATE OF VERMONT
## SUPERIOR COURT - ENVIRONMENTAL DIVISION

| | { | |
|---|---|---|
| In Re Blasdel & Koch Constr. Permit | {<br>{<br>{ | Docket No. 155-10-11 Vtec<br>(Appeal from Burlington DRB decision) |

## Judgment Order

Greg Blasdel and Jennifer Koch ("Applicants") own a small lot at 5-11 Mill Street in Burlington, Vermont. Their property is near the southerly banks of the Winooski River, which serves as the boundary line between the Cities of Burlington and Winooski. Mill Street is east of Colchester Avenue, which follows a gradual slope of the land from south to north as it descends towards the Winooski River.

Just south of Applicants' property is the property of their abutting neighbors, Steven and Sharon Litwhiler ("Neighbors"). Neighbors' property is higher in elevation than Applicants', which necessitates a retaining wall that is on or near the parties' dividing property line. A small portion of Neighbors' land is to the north of this retaining wall and is generally of similar elevation to Applicants' property. Applicants' and Neighbors' properties are depicted on the various pages of Applicants' site plan, admitted at trial as Applicants' Exhibits A through D.

Both properties lie within the Neighborhood Mixed Use Zoning District[1] and are subject to the Design Review and Historic Preservation Overlay Districts, pursuant to the City of Burlington Comprehensive Development Ordinance ("CDO") §§ 4.5.1 and §5.4.8. Both properties host buildings that still include some historic characteristics. Applicants' property currently is improved with a single building that serves as Applicants' residence, their single-room bed and breakfast, and a small commercial framing shop. Neighbors' property is also improved with a single building that serves as a multi-unit apartment complex and provides retail/commercial space that is currently occupied by a Domino's Pizza restaurant. Neighbors' property also hosts a free-standing ground sign, used to advertise the restaurant.

Applicants submitted an application for a zoning permit to construct a two-story accessory building in their rear yard that would serve as a garage/carport for four passenger

---

[1] See CDO § 4.4.2(a)(2) and CDO Map 4.4.2-1.

vehicles, with an artist's studio on the second floor above the carport. When the City of Burlington Development Review Board ("DRB") approved Applicants' request, Neighbors filed a timely appeal with this Court. The parties endeavored to resolve their disputes through both direct negotiations and with the assistance of a mediator. The Court commended the parties on their efforts at voluntary resolution, even though their negotiation sessions caused several postponements of the pre-trial discovery and trial. When the parties were unable to reach a voluntary agreement on all of their disputes, the Court conducted a trial over three days (March 19–20, and April 30, 2013) at the Costello Courthouse in Burlington. The undersigned also attended a site visit with the parties prior to the first day of trial that provided helpful context for the evidence that was admitted at trial.

Once the parties completed their presentation of evidence, the Court took a recess to review its trial notes and conduct some legal research. The Court then reconvened the hearing to announce its Findings of Fact and Conclusions of Law, based upon the evidence admitted at trial and the legal arguments presented by the parties.

This Judgment Order is not intended to substitute or supersede the Findings of Fact or Conclusions of Law announced at the end of trial on April 30, 2013; any individual wishing to review the Court's Findings and Conclusions should review the trial record. This Judgment Order is issued to provide a memorial of the Court's legal conclusions and to satisfy the Court's obligations under V.R.C.P. 58. In that light, the Court offers the following summary of its factual findings, legal conclusions, and order:

1. At the time of trial, thirteen questions remained from the original seventeen that Neighbors proposed in their Statement of Questions. These questions, all of which this Court addressed, were Questions 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16.

2. The proposed project consists of a garage/carport structure with a concrete exterior and open ends, such that the structure only partially covers two tandem rows of parked cars, with two cars in each row. See Applicants' Exhibits A through D.

3. Above the concrete garage structure will be an enclosed studio area with elongated horizontal windows near the top of the side walls. Both the studio walls and roof will be finished on their exterior with corrugated metal with a galvanized metal finish.

4. Applicants' proposed structure will serve as an accessory to Applicants' residential use of their existing historic structure. Applicants will use the accessory structure as an artist's

2

studio and garage, but in no other way will the structure be used in connection with Applicants' commercial use of their existing structure, other than for the parking of vehicles.

5.    Applicants' property currently contains spaces for up to four parked vehicles. Their proposed development will not increase the number of vehicle parking spaces available on Applicants' property.

6.    The proposed accessory structure will be shielded from most public views by Applicants' existing structure, several tall concrete block walls in the rear of their lot, and the generally sloping topography of the neighboring lands.

7.    Applicants' proposal to add an accessory structure is governed by the CDO, including its Site Plan Review and Architectural Design Review Standards. See CDO §§ 6.2.2 and 6.3.2.

8.    We first answered Neighbors' Questions 2, 3, 5, and 6 in regards to the parking requirements established in CDO Article 8. We concluded that the proposed accessory structure will not require additional parking and that the proposed realignment of Applicants' parking spaces, including their size and shape, conform to the applicable provisions of CDO Article 8, provided, however, that Applicants shall not allow or cause vehicles to encroach onto Neighbors' adjoining property.

9.    We next answered Neighbors' Question 7 in the negative, concluding that the facts presented do not warrant conditioning any approval on Applicants assuming the responsibility to maintain the concrete block retaining wall that separates the parties' properties; CDO §§ 6.2.2(b) and (g) do not provide a legal foundation for such a condition. We leave the parties to determine, independent of this land use appeal proceeding, their respective rights and responsibilities to maintain the concrete block retaining wall.

10.   Applicants and their expert proposed several conditions concerning the construction of the proposed accessory structure and how that construction may impact the existing concrete block wall that divides the parties and their properties. Those conditions are imposed below in paragraphs C(1) through (5), inclusive.

11.   We responded to Neighbors' Question 9 by concluding that the proposed parking is sufficiently screened and therefore conforms to CDO § 6.2.2(l).

12.   We rejected the suggestion made in Neighbors' Question 10 that the Court condition approval upon Applicants placing and maintaining curb stops, landscaping, and other physical

barriers on their property, so as to prevent vehicles from encroaching onto Neighbors' adjoining land.

13.     In response to Neighbors' Question 12, we concluded that the planned new lighting conforms to CDO § 6.2.2(o).

14.     Lastly, in response to Neighbors' Questions 13–16, we concluded that the proposed accessory structure conforms to the applicable Architectural Design Standards contained in CDO § 6.3.2.  The parties both offered credible expert testimony on this point.  However, we found Applicants' expert more convincing and concluded that within the context of its surrounding neighborhood, the size, mass, and materials proposed, and the roofline, fenestration, and other characteristics of the proposed accessory structure evidence a sufficient effort to propose a conforming structure that will not deviate from or contradict the historic characteristics of this important neighborhood.

### Conclusion

Based upon the evidence presented, the Court concludes the following:

a.  In regards to the realigned parking spaces, Applicants shall not allow or cause vehicles to encroach onto Neighbors' adjoining property.

b.  When the parking spaces on Applicants' property are being used for visitors to their frame shop or bed and breakfast establishment, at least one attendant must be on site to assure that vehicles exit safely and that no vehicle encroaches onto Neighbors' property. Either or both of Appellants may serve as the parking attendant.

c.  In regards to the possible impacts upon the existing concrete block wall that could occur from the construction and use of the proposed accessory structure, this approval is conditioned upon the following:

1.  Prior to the commencement of construction, Applicants shall cause a survey to be conducted of the concrete block wall, as recommended by Applicants' expert.  See Applicants' Exhibit 3.  Once construction is complete, the recommended survey shall be repeated, so that reference points on the concrete block wall can be compared to determine whether Applicants' construction has caused a material change in the elevation or integrity of the concrete block wall.  Applicants shall report the results of this analysis to Neighbors and to the City of Burlington Planning and Zoning Department.

2.  The new structure shall be no closer than ten feet from the base of the concrete block wall.

3.  The area between the concrete block wall and the new structure, once completed, shall be sodded and the sod must be maintained.

4.  Once construction is complete, the area between the concrete block wall and the new structure shall be graded in such a way that the grade and profile of the sodded area

4

shall be as before, with the exception of a minor swale, located approximately six inches outside of the new structure.

5. All drainage systems must be constructed and maintained as shown on Applicants' Exhibit A.

d. The conditions imposed by the DRB in its September 20, 2011 decision that are not superseded by the additional conditions imposed above shall remain in full force and effect. See Specific Conditions 1–7 and Standard Permit Conditions 1–18, noted on page 6 of the DRB decision.

This matter is remanded to the City of Burlington Planning and Zoning Department, solely to complete the ministerial act of issuing a zoning permit in conformance with this Judgment Order and all provisions of the DRB's September 20, 2011 decision that were not disturbed by this appeal. This completes the current proceedings before this Court on this application.

Done at Newfane, Vermont this 5th day of July, 2013.

_____

Thomas S. Durkin, Environmental Judge